IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GANNY GEORGE MUSTAPHA,<br><br>         Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | Criminal Action Number 3:02CR096-JRS |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Ganny George Mustapha's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255.

### Background

On April 2, 2002, the United States charged Benjamin F. Okorocha, a.k.a. Ganny George Mustapha,[1] in a one hundred and twenty-six (126) count indictment. Counts One through One Hundred and Fourteen (114) charged petitioner with separate instances of bank fraud in violation of 18 U.S.C. § 1344.[2] Count One Hundred and Fifteen (115) charged petitioner with conspiring with Willie Hammond, III, Ricky Barksdale and others to commit bank fraud in violation of 18 U.S.C.

---

[1] The Indictment lists five additional aliases; according to the Pre-Sentence Report, petitioner is known by at least twelve aliases.

[2] Title 18, U.S.C. § 1344 provides that "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

§ 371. The Indictment alleged that petitioner and his co-conspirators solicited individuals to negotiate counterfeit checks. According to the indictment, petitioner procured copies of legitimate corporate checks, counterfeited those checks, substituted the names of the individuals recruited to deposit those checks then mailed them to the named individuals. Those individuals then cashed the checks and divided the proceeds with petitioner.

Count One Hundred and Sixteen (116) charged petitioner with conspiracy to launder money in violation of 18 U.S.C. § 1956(h) from on or about September 1, 1998 through July 15, 1999. Counts One Hundred and Seventeen through One Hundred and Twenty-Six charged petitioner with separate acts of money laundering on various dates between September 9, 1998 and July 28, 1999 in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and § 2.

On December 30, 2002, petitioner appeared before Magistrate Judge David Lowe, along with defense counsel, waived his right to Rule 11 proceedings before a United States District Judge and proceeded to plead guilty to Counts Seventy-Five (Bank Fraud) and One Hundred and Fifteen (Conspiracy to Commit Bank Fraud). Pursuant to the terms of the plea agreement, petitioner acknowledged that Count Seventy-Five carried a maximum prison sentence of thirty (30) years and Count One Hundred and Fifteen carried a maximum term of five (5) years in prison. Plea Agreement ¶ 1.

Petitioner agreed that the district court would impose his sentence in accordance with the Sentencing Guidelines and Policy Statements and that the Court held the authority to impose any sentence within the statutory maximum for the separate offenses to which petitioner pled guilty. Plea Agreement ¶ 4. Petitioner recognized that Title 18, U.S.C. § 3742 afforded him the right to appeal the sentence imposed but petitioner knowingly waived the right to appeal any sentence within the

maximum provided in the statutes of conviction (or the manner in which that sentence was determined). Plea Agreement ¶ 4. Petitioner represented to the Court that his attorney rendered effective assistance of counsel. Plea Agreement ¶ 6.

In exchange for petitioner's guilty plea, the Government agreed to dismiss the remaining counts of the indictment and refrain from further criminally prosecuting petitioner in the Eastern District of Virginia for the conduct described in the statement of facts or the indictment. Plea Agreement ¶ 5. Finally, for purposes of the instant 2255 motion, petitioner adopted the statement of facts that accompanied the plea agreement and agreed that had the matter proceeded to trial, the United States would have proved the stated facts beyond a reasonable doubt. Plea Agreement ¶ 8.

The Statement of Facts detailed the bank fraud. Petitioner stipulated that he conspired with Willie Hammond, Ricky Barksdale and others to commit bank fraud between on or about May 1, 1998 and September 30, 1999. Petitioner obtained copies of corporate checks from bank employees in the New York City area and gave these copies to an unidentified individual who reproduced the counterfeit checks. Petitioner then forged the authorizing signatures on the checks, filled in the payee's name and the amount and delivered the checks to the individuals recruited to negotiate the checks. To facilitate the fraud, petitioner often obtained false identification, typically driver's licenses, for the individuals who negotiated the checks.

For his efforts in the fraud, petitioner received approximately one-third of the proceeds from each check successfully negotiated. Petitioner stipulated that the actual loss to victim banks in the Eastern District of Virginia was $269,125.08; however, the intended loss was $318,842.46. The statement also included the following stipulation:

3

> For relevant conduct purposes, the [petitioner] and the government agree that the loss could be as high as $6,000,000 when related conduct outside the Eastern District of Virginia is counted. The parties agree that the government bears the burden of proving loss in excess of $318,842.46 by a preponderance of the evidence.

Statement of Facts ¶ 7. After a thorough review of the plea agreement and statement of facts, the Magistrate Judge accepted petitioner's guilty plea and filed a Report and Recommendation with this Court. Hearing no objection to the Report, this Court adopted the Magistrate Judge's recommendation and found petitioner guilty of Counts Seventy-Five and One Hundred and Fifteen.

On April 11, 2003, petitioner came before this Court for sentencing. In advance of the sentencing hearing, petitioner filed objections to the Pre-Sentence Report and a motion for downward departure. The Pre-Sentence Report (PSR) assigned petitioner an Offense Level 30 and a Criminal History Category III for a Sentencing Guideline Range of 121 to 151 months. The Probation Officer determined the total loss to be more than $5,000,000 (specifically $7,304,497.21), that the scheme intended to defraud more than one victim and that the scheme affected a financial institution whereby petitioner derived more than $1,000,000 in gross receipts from the offense. Petitioner also received a 4 point enhancement for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. See United States Sentencing Guidelines § 3B1.1(a).

The PSR assessed petitioner a total of five criminal history points. Petitioner received three points for his prior felony convictions and two additional points for committing the instant bank fraud offenses while on probation for a prior conviction. Petitioner received one point based on his conviction on April 14, 1993 for criminal possession of stolen property and possession of forged instruments; one point for possession of forged instrument and aggravated unlicensed operator of

a motor vehicle in 1999; and one point for possession of forged instrument, aggravated unlicensed operator of a motor vehicle and no driver's license in 2002.

Petitioner received the full three point reduction in his offense level for acceptance of responsibility. See U.S.S.C. § 3E1.1. This adjustment reduced petitioner's Offense Level to 27 and resulted in a Guideline Range of 87 to 108 months. Prior to the sentencing hearing, petitioner objected to the enhancements applied by the Probation Officer in calculating his guideline range. Petitioner claimed that the Report improperly assessed the two additional points to his criminal history for committing the instant offense while on probation for a prior conviction and that the Probation Officer improperly relied on the testimony of Willie Hammond for the beginning date of the conspiracy – June of 1997 – rather than the stipulated date in the statement of facts – May of 1998. The later May date takes the commission of the instant offense outside the five year probationary period for his 1993 conviction and would remove two criminal history points, backing his criminal history category down from III to II. Petitioner argued that he did not play a leadership role in the conspiracy and that the amount involved in the fraud did not exceed $318,842.46. Additionally, petitioner claimed that the scheme did not defraud more than one victim. He asserted that the intended victim was the Federal Deposit Insurance Corporation and not the individual banks. Lastly, petitioner objected to the finding that his scheme affected a financial institution whereby he derived more than $1,000,000 in ill-gotten gains.

At the sentencing hearing, this Court heard argument, and the Government presented witnesses, regarding petitioner's role in the offense, the duration of the conspiracy and the amount of total loss. The Government called Willie Hammond as its first witness. Hammond testified that he first discussed the counterfeit scheme with petitioner in July of 1997. Sentencing Transcript p.

5. According to Hammond, the conspiracy initially targeted Fleet Bank in New York. Hammond stated that he recruited approximately five individuals to present the counterfeit checks which he received from petitioner and that petitioner provided fraudulent identification for the individuals to use when presenting the checks to the banks. Sentencing Transcript p. 7-8.

From Hammond, the Court heard that the scheme earned the conspirators approximately $100,000 per day for the months of July and August of 1997 while operating in the New York area and that Hammond personally witnessed petitioner sign the "authorized" signatures on the counterfeit checks. Sentencing Transcript p. 10. The conspiracy then moved on to Philadelphia where Hammond earned an additional $100,000. Sentencing Transcript p. 11. Hammond received approximately $200,000 from the scheme's operations in North Carolina, South Carolina and Tennessee. Sentencing Transcript p. 15. In Florida, the conspiracy collected approximately $200,000. Sentencing Transcript p. 18.

The Court also heard from FBI Special Agent David Hulser who tracked the paper trail in this case. Agent Hulser testified that the Government's investigation of this case began in July of 1999 and focused on Ricky Barksdale. Barksdale led the agents to Hammond who in turn led to the petitioner. Agent Hulser described a check written in the amount of $257,654.75 and made payable to Proco Investment. Agent Hulser testified that the check matched two other checks connected to the conspiracy. Sentencing Transcript p. 43. Agent Hulser also detailed the contents of a spreadsheet provided by Fleet Bank describing checks paid to institutions. Hammond later identified the institutions from the spreadsheet as payees on some of the fraudulent checks. Sentencing Transcript p. 44-47.

Following brief argument, this Court ruled from the Bench on several of the issues. The Court found that the PRS correctly applied the 4 level enhancement to petitioner's offense level for his aggravating role. The evidence clearly demonstrated that petitioner organized a scheme involving more than five individuals. The Court concluded that petitioner's scheme involved more than one victim, citing at least three different banks, and applied a 2 level enhancement. The evidence also revealed that the scheme affected a financial institution from which petitioner derived more than $1,000,000. Lastly, the Court held that the evidence established that the conspiracy began in either June or July of 1997; as a result, the Court concluded that petitioner committed the instant conspiracy while on probation for his 1993 conviction.

With regard to the amount of the total loss, the Court did not entirely accept Hammond's estimate that the conspiracy earned over $6,000,000. The Court made the following finding:

> [R]ather than accept Mr. Hammond completely on this $6 million figure as it relates to New York and the other – Massachusetts and Connecticut, that I would try to do something to bring it within the range of what was happening, what we know happened in the other jurisdictions. And so rather than the $6 million figure for the rest of New York and Massachusetts and Connecticut, I am going to apply a figure of $1,200,000 and add that to the $100,000 in Philadelphia, $80,000 in North Carolina, $50,000 in South Carolina, $400,000 in Florida, $20,000 in California and $318,842.46 in the Richmond area.

Sentencing Transcript p. 71. The Court then reduced petitioner's offense level by one point to 26 with a Criminal History Category III leading to a Guideline Range of 78 to 97 months. Prior to imposing a sentence, petitioner, in response to the Court's inquiry, told the Court that he was "sorry for everything that happened" and accepted responsibility. Sentencing Transcript p. 74. Thereafter, the Court committed petitioner to the custody of the United States Bureau of Prisons for a term of

88 months in prison, consisting of 88 months on Count Seventy-Five and 60 months on Count One Hundred Fifteen, to be served concurrently.

The Court imposed petitioner's sentence on April 11, 2003 and petitioner did not file an appeal. On August 30, 2004, the Court directed the Clerk's Office to file petitioner's timely § 2255 petition. On September 20, 2004, the Court granted petitioner's motion to amend his petition and on September 29, 2004, the Court received the Government's response to petitioner's motion. The Court granted petitioner additional time to file his reply brief which petitioner filed on November 26, 2004. In anticipation of the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. __ (2005), the Court took petitioner's motion under advisement. After a thorough review of the record and the parties' briefs, this matter is now ripe for consideration.

Petitioner's Arguments

Petitioner's motion constitutes a collateral attack on his sentence as imposed by this Court and invokes our jurisdiction pursuant to 28 U.S.C. § 2255. As such, petitioner must prove by a preponderance of the evidence that the Court imposed his sentence in violation of the United States Constitution. <u>See</u> 28 U.S.C. § 2255; <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (<u>per curiam</u>).

<u>a. Direct Challenges to Allegedly Improper Sentence Enhancements</u>

Petitioner presents a wide range of arguments in his motion. First, petitioner challenges the enhancements to his sentence based on the counterfeit transactions with Fleet Bank. In petitioner's own words, he is "challenging the enhancement of his sentence . . . if greater than the terms of the plea agreement." Petitioner contends that his plea agreement did not encompass his conduct with regard to Fleet Bank and that the inclusion of such relevant conduct at sentencing is unconstitutional.

Petitioner asserts that the Government fabricated the evidence connecting him in any way to transactions with Fleet Bank. In addition, petitioner attacks the credibility of Willie Hammond as a witness and accuses the Government of using a perjurous witness to deceive the Court at his sentencing hearing. These claims amount to a collateral attack on his sentence; contrary to his assertions, petitioner cannot attack the propriety of his sentence enhancements without, necessarily, challenging the term of imprisonment imposed.

Ordinarily, an error in the application of the sentencing guidelines cannot be raised in a § 2255 proceeding absent extraordinary circumstances. See United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). In this regard, the Fourth Circuit reasoned that

> If defendants could routinely raise, in a § 2255 collateral proceeding, errors in sentencing not raised on direct appeal which the sentencing court had not had an opportunity to correct, Congress's intent of encouraging direct appellate review of sentences under the Sentencing Guidelines would be frustrated. Moreover, the Federal Rules of Criminal Procedure now plainly set out the procedure that must be used for challenges to presentencing reports and sentencing procedures.

United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994) (quoting United States v. Essig, 10 F.3d 968, 979 (3rd Cir. 1993). Petitioner in the instant case appears to assert an error in the Court's decision to use relevant conduct to determine the amount of loss associated with petitioner's fraudulent scheme.[3] Petitioner contends that the Court improperly arrived at the amount of loss and, therefore, erred in applying the Sentencing Guidelines. This is not the kind of error envisioned by

---

[3] This apparent assertion is buttressed by Petitioner's supplemental brief further attacking his sentence based on Blakely v. Washington, 124 S. Ct. 2531 (2004).

the Fourth Circuit in Pregent;[4] nevertheless, petitioner advances arguments that should have been raised for the first time on direct review.

Errors by the sentencing court should have been raised on direct appeal; these include whether the Court sentenced petitioner in violation of the plea agreement or based on insufficient evidence. Failure to raise the issue on direct appeal is considered a procedural default. However, procedurally defaulted claims are not barred per se. "In order to proceed on a § 2255 motion 'based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.'" Maybeck, 23 F.3d at 891 (quoting United States v. Frady, 456 U.S. 152, 167-68 (1982)).[5] Within the Fourth Circuit, the Frady standard applies to collateral challenges to unappealed guilty pleas. See Maybeck, 23 F.3d at 892.

To establish cause in order to excuse a procedural default, petitioner must point to something external "such as the novelty of the claim or the denial of the effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Petitioner raised two possible grounds for an ineffective assistance of counsel claim. First, petitioner claims that his attorney allowed him to sign a stipulation, presumably either the statement of facts or the plea agreement, that permitted the erroneous sentence. Second, petitioner claims that his attorney failed to object to the

---

[4]In Pregent, the petitioner claimed that the district court miscalculated his sentence; the distinction here is that petitioner claims that the Court erred in making certain factual findings which then added to the term of imprisonment imposed.

[5]Although not applicable in this case, a procedurally defaulted petitioner may also demonstrate "that a miscarriage of justice would result from refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). A petitioner demonstrates a miscarriage of justice by showing his actual innocence by clear and convincing evidence. Id. Petitioner does not proclaim his actual innocence in his petition.

Report and Recommendation of the Magistrate Judge. These claims do not establish the necessary cause to excuse petitioner's procedural default for failing to raise the alleged errors on direct appeal because they had no apparent impact on petitioner's decision to plead guilty and do not explain why the issues were not presented to the Court of Appeals. However, petitioner's third contention may raise a meritorious claim.

Petitioner charges that his attorney rendered ineffective assistance of counsel by failing to appeal the Court's decision denying his objections to the Pre-Sentence Report as requested. To establish cause for a procedural default based on ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." Id.; see also Strickland v. Washington, 466 U.S. 668 (1984).[6]

---

[6] The amount of prejudice a petitioner must show is unclear. In Richmond v. Polk, 375 F.3d 309, 326 n.7 (4th Cir. 2004), the Court of Appeals noted that
> [i]n concluding that Richmond cannot establish actual prejudice to excuse his procedural default, we note that there is a question as to "whether the showing of prejudice required to excuse procedural default is identical to the showing of prejudice required to establish ineffective assistance of counsel, namely, that 'there is a reasonable probability that, but for the [errors], the result of the proceeding would have been different.'" Burket v. Angelone, 208 F.3d 172, 189 n. 17 (4th Cir. 2000) (quoting Strickland, 466 U.S. at 694); see also Williams v. French, 146 F.3d 203, 210 n. 10 (4th Cir. 1998), cert. denied, 525 U.S. 1155, 143 L. Ed. 2d 66 (1999) (noting uncertainty as to whether showing of actual prejudice to excuse procedural default is the same as showing of actual prejudice to establish ineffective assistance of counsel under Strickland); United States v. Dale, 329 U.S. App. D.C. 335, 140 F.3d 1054, 1056 n. 3 (D.C. 1998) (same); United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992) (same).

Regardless of the relevant prejudice standard, a person convicted in federal district court has both a right to a direct appeal and a right to be represented by counsel during the appeals process. See Coppedge v. United States, 369 U.S. 438 (1962); Douglas v. California, 372 U.S. 353 (1963). Accordingly, a petitioner may claim ineffective assistance of counsel for his attorney's failure to file a notice of appeal upon request and that petitioner need not show that he was prejudiced by counsel's failure to file the appeal. Indeed, the Fourth Circuit holds "that a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993) (reversing the judgment and remanding with instructions to vacate the judgment of conviction and enter a new judgment from which an appeal can be taken); see United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) ("An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective.").

Petitioner states in his motion that "[d]espite the fact that defense counsel made several objections at sentencing counsel did not file an appeal of those objections, even though Mr. Mustapha requested him (Mr. Geary) to do so." Reply Brief p. 7. Certainly, counsel's failure to file an appeal as requested by his client qualifies as ineffective assistance. However, the Court cannot accept petitioner's bald allegations without further investigation. Petitioner must offer more than naked assertions which do not sustain his burden of proving by a preponderance of the evidence that he is entitled to relief under § 2255. See Raspberry v. United States, 2001 U.S. Dist. LEXIS 23276, *8 (E.D. Va. 2001).

Accordingly, the Court directed that the United States answer petitioner's claim that defense counsel ignored his request to appeal his sentence. The Court also ordered petitioner to submit any evidence in support of his claim. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The United States' response correctly asserts that petitioner's contention in this regard raised a new claim made more than one year after petitioner's conviction became final and is therefore untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2255.

Petitioner did not charge his attorney with error for failing to appeal the Court's resolution of petitioner's sentencing objections in his initial § 2255 application. Petitioner made this claim for the first time in his reply brief to the Government's response.[7] According to the Certificate of Service attached to petitioner's reply brief, petitioner mailed his brief on November 23, 2004. See Houston v. Lack, 487 U.S. 266, 276 (1988). The Court sentenced petitioner on April 11, 2003; allowing ten days to file an appeal, see Fed. R. App. P. 4(b)(1), petitioner's conviction became final on April 21, 2004. Accordingly, petitioner's attempt to amend his § 2255 motion through his reply brief to add an ineffective assistance of counsel claim is untimely.

The Court must then determine whether the amendment relates back to petitioner's original § 2255 filing as permitted by Rule 15(c) of the Federal Rules of Civil Procedure. See Rule 12 of the Rules Governing Section 2255 Proceedings. Relation back is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed. R. Civ. P. 15(c)(2). The Fourth Circuit interpreted the phrase "arose

---

[7]Pursuant to Rule 15(a), which permits a party to amend his pleading once as a matter of course at any time before a responsive pleading is served, petitioner did not seek leave of court to add this ineffective assistance of counsel claim.

out of the conduct, transaction, or occurrence" in <u>United States v. Pittman</u>, 209 F.3d 314 (4th Cir. 2000), and held that the type of amendment in this case would not relate back to the original filing.

The situation in <u>Pittman</u> is virtually identical to that presented by petitioner's reply brief.[8] After pleading guilty to conspiracy to possess with the intent to distribute cocaine base, Pittman failed to appear at his first scheduled sentencing hearing. <u>Pittman</u>, 209 F.3d at 316. At the subsequent hearing, the district court enhanced Pittman's sentence for obstruction of justice for failing to appear. <u>Id.</u> Pittman then filed a timely § 2255 petition where he claimed that (1) the district court lacked jurisdiction to impose an enhanced sentence based on his prior convictions; (2) the enhancement for a prior conviction was improper; and (3) the government had not established by a preponderance of the evidence that the drugs at issue were cocaine base. <u>Id.</u> Before the government filed a responsive pleading, petitioner moved to amend his motion to challenge the obstruction of justice enhancement and to state a claim for ineffective assistance based on counsel's failure to file a requested appeal. <u>Id.</u>

The Court found that Pittman's new claims did not relate back to his original claims "because they [arose] from separate occurrences of both time and type." <u>Id.</u> at 318 (internal quotations omitted); <u>accord</u> <u>United States v. Craycraft</u>, 167 F.3d 451, 456-57 (8th Cir. 1999). The Court reasoned that

> [t]he failure to file an appeal occurred after the sentencing hearing where the court imposed the enhancements. The ineffective assistance of counsel claim also arises out of different conduct and transactions from Pittman's first motion, which challenged the district court's jurisdiction and the imposition of an enhanced sentence.

---

[8]The only difference, which is unexceptional, is that in <u>Pittman</u>, the petitioner presented his new claim in a motion to amend. Petitioner in the instant case did not seek a motion to amend, instead, he sought to raise his argument for the first time in his reply brief.

>Pittman's ineffective assistance of counsel claim is completely new and thus cannot relate back to his original pleading.

Pittman, 209 F.3d at 318. The Court rejected Pittman's argument that the "occurrence" for purposes of Rule 15(c) should be the entire trial and sentencing proceeding. Id. The Court concluded that such a broad rule "would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence." Id. The Court was not willing to permit this effort to undermine the limitations period established by the AEDPA.[9] Clearly the law requires petitioner to bring all of his claims about which he possesses the facts in a timely-filed habeas petition. See Felix v. Mayle, 379 F.3d 612, 619 (9th Cir. 2004) (J. Tallman, dissenting in part) (citing Pittman, 209 F.3d at 318).[10]

---

[9] The Seventh and Ninth Circuits take a different approach to such amendments. In Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004), a state inmate sought a federal writ of habeas corpus to overturn his conviction. Felix's original petition claimed that admission of videotape statements of a prosecution witness violated the Confrontation Clause. After the expiration of the one-year period, Felix sought to amend his petition to assert that his right against self-incrimination was violated by the admission into evidence of involuntary statements Felix made during a police interview. The Ninth Circuit concluded that "a prisoner's new claim arises out of the same transaction as his original petition because the transaction or occurrence in issue is his state trial and conviction." Id. at 614; accord Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003). The Ninth Circuit reasoned that Felix's coerced confession claim arose from the same transaction as his confrontation claim – his trial and conviction in state court – because both assert that his conviction was tainted by unconstitutional evidence introduced at his trial. Felix, 379 F.3d at 615. The Court refused to treat a criminal trial and conviction as a series of individual occurrences. Id.

[10] Mayle appealed the Ninth Circuit's decision. On April 19, 2005, the Supreme Court heard argument on the issue of applying Rule 15(c) in the context of a habeas petition but as of this writing has not handed down its decision. In any event, the Felix decision may be distinguishable from the instant case and it is not clear whether or not the Ninth Circuit would treat the sentencing hearing and post-sentencing events as the same occurrence.

Petitioner's § 2255 Motion alleged that this Court enhanced his sentence "unconstitutionally and in violation of the Supreme Court law." Petitioner claimed that counsel "was deficient in his duty to his client by not challenging the enhancement and 'but for' that omission, Mustapha would not have been enhanced."[11] In his § 2255 motion, petitioner challenged the inclusion of certain evidence related to Fleet Bank in calculating the amount of loss connected to the bank fraud. Petitioner also argued that the prosecutor submitted false and misleading evidence to the Court and that this misleading evidence resulted in his enhanced sentence. Finally, petitioner asserted that counsel was "prima facie ineffective" when he "allowed [petitioner] to sign a stipulation that allowed an erroneous sentence" and when he failed to object to the Magistrate Judge's report and recommendation. Petitioner's § 2255 application is silent on the issue of counsel's failure to file an appeal as requested.

In his reply brief, petitioner states for the first time that "[d]espite the fact that defense counsel made several objections at sentencing[,] counsel did not file an appeal to those objections, even though [petitioner] requested him . . . to do so." Petitioner cites the Court to Roe v. Flores-Ortega, 528 U.S. 470 (2000), in support of his contention. Under the performance prong of Strickland, a lawyer has a Sixth Amendment obligation to consult with his client about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal because there are nonfrivolous grounds for appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. 470, 480 (2000). Alternatively, defense counsel is per se ineffective for failing to file an appeal when so directed by

---

[11] As noted in the statement of facts above, defense counsel did challenge the enhancements and successfully argued against the amount of loss submitted by the United States.

his client. See Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000). Petitioner argued that counsel's ineffective assistance satisfies the cause requirement for not raising his objections on direct appeal.

The holding in Pittman is directly on point and precludes any other conclusion than that petitioner is barred by the AEDPA from raising this ineffective assistance of counsel claim. The allegation regarding the failed appeal arises out of conduct and transactions not addressed in petitioner's first motion. The original allegations concerned events occurring prior to petitioner's guilty plea, events that occurred prior to sentencing and alleged errors occurring during the sentencing hearing. This conduct and these transactions are separate and distinct from those giving rise to the ineffective assistance of counsel alleged to have occurred post-sentencing. Petitioner's allegation that counsel failed to file an appeal as requested is time-barred by the AEDPA as it does not relate back to his original filing. Therefore, petitioner cannot demonstrate cause as required by Frady and Maybeck in order to overcome his procedural failings. Accordingly, petitioner's motion will be DISMISSED as procedurally defaulted.

Additionally, no set of extraordinary circumstances exist which would allow this Court to excuse petitioner's default. Finding no cause to excuse petitioner's default, the Court need not address any actual prejudice which may have resulted from the errors raised by petitioner in his original § 2255 application.

An appropriate Order shall issue.

ENTERED this 6th day of JUNE, 2005

                                        /s/ James R. Spencer
                                        UNITED STATES DISTRICT JUDGE